**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **In re:**<br><br>**KARL C. HANSEN AND LISA H. HANSEN,**<br><br>      **Debtors.** | CHAPTER 7<br>CASE NO. 12-11907-JMD<br><br>Hearing Date: July 19, 2016<br>Hearing Time: 2:00 p.m. |

**DEBTORS' (i) MOTION TO REMOVE OLGA L. GORDON**
**AS CHAPTER 7 TRUSTEE OF KARL C. AND LISA H. HANSEN**

Pursuant to 11 U.S.C. § 324, Karl C. Hansen and Lisa H. Hansen ("**Debtors**"), by and through their attorneys, and third-party defendant SyncPoint Imaging, LLC ("**SyncPoint**"), by and through its attorneys, submits this Motion to Remove Olga L. Gordon (the "**Trustee**") as Chapter 7 Trustee of Karl C. and Lisa H. Hansen ("**Motion**").

**INTRODUCTION**

Trustee should be removed from this matter for cause pursuant to 11 U.S.C. § 324 due to her wrongful conduct as set forth in the Adversarial Proceeding against the Trustee. (Dkt. 63, attached as Exhibit A hereto, and incorporated herein by this reference.) A trustee can be removed for violating her fiduciary duty, misconduct, failing to perform duties, lack of disinterestedness, holding an adverse interest to the estate, as well as other reasons. These criteria are met as Trustee took unilateral actions without this Court's approval or involvement, and which actions disregarded the best interests of the Debtors and/or creditors. Even though the Bankruptcy Code required Trustee to file an adversary proceeding first, Trustee unlawfully attempted to divest the Debtors and SyncPoint of a patent that had been asserted as being infringed by a number of third parties including PixArt Imaging, LLC ("**PixArt**") and Nintendo of America, Inc. ("**Nintendo**") (the

"**PixArt Defendants**") in the Eastern District of Texas titled *SyncPoint Imaging, LLC v. Nintendo of America, Inc., et al.*, Case No. 2:15-cv-00247-JRG-RSP (the "**Texas Case**") without authorization to do so. This case had been pending nearly a year and there had been extensive discovery, motion practice and the preparation of expert reports.

Although the patent asserted in the Texas Case had once been an asset of the bankruptcy estate, it had been abandoned by the Trustee more than two years before the filing of the Texas Case. At a critical juncture in the Texas Case, and at the insistence and encouragement of counsel for the PixArt and Nintendo defendants, the Trustee attempted to sell the patents at a fire-sale price of $150,000 to none other than PixArt. Such a sale to a defendant in the Texas Case would extinguish any value in the asserted patent and effectively end the Texas Case. Trustee's attempted sale of the asserted patent in the Texas Case not only violated her fiduciary duties because she violated the Bankruptcy Code, but this action materially interfered with the Texas Case extinguishing most, if not all, the value enforcement had created in the patent prior to trial.

Trustee's attempted sale violated her fiduciary duties as she acted without the involvement of the Debtors or SyncPoint, or the Approval of the Court – all to satisfy $19,000 in creditor claims. In addition, since SyncPoint and Debtors have initiated an adversarial proceeding against the Trustee, she is now irrefutably compromised as she has become an interested party and/or a material witness towards the reduction of value of the assets at issue. She therefore is conflicted and can no longer act in a neutral position for the best interests of the estate. For these reasons, and other mentioned below, the Court should remove Trustee from her position, and replaced by another disinterested trustee. This will allow for proper administration if it is **first** determined whether the patents are still assets of the estate.

## RELEVANT FACTS

1.    On June 11, 2012, the Debtors filed a voluntary petition (the "**Petition**") in this

Court under Chapter 7 of 11 U.S.C. §§ 101-1330 (the "**Bankruptcy Code**"), which disclosed certain assets, including three patents ("Assets"), one of which was United States Patent No. 6,275,214 (the "**'214 Patent**"). (Dkt. 1; the Court Docket is attached hereto as Exhibit B.)

2.      At the Section 341 meeting of creditors ("**341 Meeting**"), the Trustee inquired about the Assets disclosed in Debtors' Petition, including questions regarding the ownership of the Assets, the value of the Assets, a licensing agreement that Mr. Hansen had entered into with respect to the Assets with PixArt Imaging, Inc. ("**PixArt**"), and the nature of the Assets. (*See id.*; *see also* Declaration of Karl Hansen ("Hansen Dec.") ¶ 4, attached hereto as Exhibit C.)

3.      Although Mr. Hansen suspected that PixArt was using the '214 Patent to sell products to Nintendo and failing to report these sales, he did not know whether he had a viable claim for patent infringement as he could not afford to retain legal counsel to make that determination. No law firms that Mr. Hansen contacted would consider pursuing the claim on contingency. Thus, due to their destitute state (as reflected by their filing for bankruptcy), Debtors believed that they would never be able to enforce the '214 Patent, and consequently that it had no value. (*Id.* ¶¶ 5-8.)

4.      On July 16, 2012, the Trustee filed a Report of No Distribution and, on January 2, 2013, this case was closed, resulting with the Assets being abandoned to the Debtors by operation of law under 11 U.S.C. § 554(c)., and no longer part of the bankruptcy estate. (Dkt. 8, 24.)

5.      In February 2015, over two years later, Mr. Hansen assigned all of his rights in and to the Assets to SyncPoint (the "**Assignment**"), including the '214 Patent. (Ex. C, ¶ 9.)

6.      On February 20, 2015, as owner of the Assets, SyncPoint initiated the Texas Case by filing a complaint in the Texas Case for patent infringement of the '214 Patent, breach of contract, and related claims (the "**Claims**"). (Attached hereto as Exhibit D is the Court Docket for the Texas

Case; also attached hereto as Exhibit E is the Texas Case Complaint.)

7.      Since initiation of the Texas Case, more than $1 million dollars has been invested in enforcing and litigating the '214 Patent against the PixArt Defendants. (Ex. C, ¶ 10.)

8.      The amounts at issue for the Claims in the Texas Case are in the tens of millions of dollars; fact discovery is closed, with some remaining discovery disputes to be decided; and expert discovery is ongoing. (Ex. D.)

9.      On September 3, 2015, this Court reopened this bankruptcy case (Dkt. 27), resulting in the stay of the Texas Case. (Ex. D, ¶ 233.)

10.     On December 22, 2015, the Trustee signed an Asset Purchase Agreement ("**Purchase Agreement**") with PixArt, ostensibly giving PixArt the right to purchase the Assets, including the '214 Patent asserted in the Texas Case. In exchange, the Trustee received $15,000 and would receive an additional $135,000 once the sale was approved by this Court. (Attached hereto as Exhibit F is the Purchase Agreement.)

11.     That same day, Trustee filed a motion in this Court, seeking to sell the Assets to PixArt (Dkt. 39), which was subsequently denied. (Dkt. 55.)

12.     The Trustee's purported sale is highly suspect as to whether it had been made in good faith or to a *bona fide* purchaser, because it was made to PixArt, one of the Defendants in the Texas Case where the amounts at issue in the matter greatly exceeded the proposed purchase price, and was entered into without disclosure to the Court or creditors and/or Debtors as the Asset Purchase Agreement was signed before any motions to sell were filed. (*Compare* Dkt. 39 to Ex. E.)

13.     Trustee admittedly has no, or very little, experience in patent law, and does not know how to properly value patent assets, the nuances of patent litigation, or related claims for patent infringement. Trustee had not read the patents at issue and/or did not understand their claim scope, the

4

infringement contentions, or the products and processes accused of infringement in the Texas Case. Trustee did not have access to confidential technical information establishing PixArt Defendants' infringement. Trustee did not engage an expert to assist her with understanding the patents, the claims, potential damages, or the valuation of the Assets or the Claims in the Texas Case, nor did she conduct any market research or bidding process to determine the true value of the Assets and the Claims. (*See* Dkt. 39.)

14.      SyncPoint had engaged a damages expert in the Texas Case at extensive cost who valued the damages claims in the tens of millions of dollars and not less than $28 million dollars—a report she failed to consider when valuing the Assets. (Ex. C, ¶ 11.)

15.      The Trustee's actions had the immediate effect of devaluing the Assets, the Claims, and the Texas Case to a *de minimus* value as the Trustee's claim that the '214 Patent was a bankruptcy asset raised the significant and fatal question as to whether SyncPoint's standing to have brought the Texas Case. (Ex. C, ¶ 20.)

16.      The Trustee was well aware that the Sale was not to a bona fide purchaser and not for a fair and marketable amount because the PixArt Defendants could avoid liability in the Texas Case by purchasing the Assets. Trustee was also aware that over $1 million had been spent prosecuting the Texas Case. (Ex. C, ¶¶ 21-22.)

17.      Trustee colluded with the PixArt Defendants regarding the Sale of the Assets, a fact that was confirmed when Trustee requested deposition transcripts (that related to testimony regarding the bankruptcy matter) from the Texas Case—the existence of which should have been unknown to her (and known by the PixArt Defendants) due to their confidentiality designations. (Ex. C, ¶¶ 16-19.)

18.      On January 29, 2016, Trustee initiated an adversary proceeding against Debtors to

claw back and assert control over the Assets, including the '214 Patent, shortly after Debtors opposed her short-sale of the Assets. (Dkt. 57.)

19.     Nevertheless, the Trustee without any support or reference represented to the Court and the parties that she "believes that the Purchase Price represents the fair market value of the Assets." (Dkt. 39-1, p. 1.)

20.     The Notice to Sell was filed on December 22, 2015 nearing the Christmas holiday while counsel for the relevant parties were largely unavailable. (Dkt. 39.)

21.     The Trustee filed a Motion to Expedite Hearing on Chapter 7 Trustee's Motion for Authority to Sell ("**Motion to Expedite**") and the hearing was set for January 5, 2016, directly after the Christmas and New Year holidays. (Dkt. 40.)

22.     The Trustee purposefully rushed the Notice to Sell, the Motion to Expedite, and the hearing during the Christmas and New Year holidays in such a manner as to materially hamper the Debtors' and SyncPoint's counsel from responding, objecting to, and appearing at the hearing to force the sale through. (*See* Dkt. 40.)

23.     Trustee failed to include in the Purchase Agreement an accounting of the costs and fees associated with maintaining the Assets including the validity of the patents and the investment made in bringing the Claims. (Ex. E.)

24.     Trustee failed to make a determination of the allocation to SyncPoint and the Debtors of any excess value after a sale of the Assets. (*Id.*)

25.     On the Purchase Agreement Date, the total amount of unpaid claims filed against the Estate was approximately $19,000, which is still the effective amount.

26.     For these reasons, the Debtors and SyncPoint initiated their adversary complaint against Trustee on June 10, 2016. (Dkt. 63; Ex. A.) This complaint will entail discovery of Trustee's

6

actions relating to the PixArt Defendants, including communications relating to the Assets and the Texas Case. Debtors and SyncPoint will depose Trustee to clearly establish Trustee's conflict of interest, her breaches of duties and wrongful actions. (*See* Exs. A and C, ¶¶ 23-24.)

## ARGUMENT

### I.      THE TRUSTEE SHOULD BE REMOVED FOR CAUSE.

"The court, after notice and a hearing, may remove a trustee … for cause." 11 U.S.C. § 324(a). "[A]lthough sufficient cause is not defined in the Bankruptcy Code, it is left for the courts to determine on a case by case basis." *See In re AFI Holding, Inc.*, 530 F.3d 832, 845 (9th Cir. 2008) (internal quotations and citations omitted). "It is well established that cause may include … violation of the trustee's fiduciary duties, misconduct or failure to perform the trustee's duties, or lack of disinterestedness or holding an interest adverse to the estate." *Id.* Courts have also found that:

> A trustee may be able and perfectly honest, and yet the court may be satisfied that it is not for the best interests of the estate that he continue to act … Since it is the welfare of the estate that is the primary concern of this court, the grounds for removing a trustee do not necessarily have to encompass actual malfeasance. Most importantly, it is vital to the administration of a bankrupt's estate that the trustee be independent, vigorous and efficient.

*Matter of Russo*, 18 B.R. 257, 273 (Bankr. E.D.N.Y. 1982) (internal quotations and citations omitted). As an officer of the court, a trustee owes a primary duty to the administration of justice. *In re Dinova*, 212 B.R. 437, 447 (B.A.P. 2d Cir. 1997). Trustee breached her fiduciary duties, made fraudulent or negligent misrepresentations, and improperly colluded with a defendant in the Texas Case all to divest the Debtors of the Assets for nominal value, and as such, should be removed for cause.

### A.      Trustee Failed to Perform Her Duties and Engaged in Misconduct.

Trustees are to promptly and efficiently marshal and distribute the estate. *Zimmerman v. Farmington Shoe Co.*, 31 F.2d 405, 406 (1st Cir. 1929). A trustee owes duties to the bankruptcy estate

which includes "[a]ll interests of the debtor." *See* 11 U.S.C. § 541(a)(2). A trustee "shall collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). A trustee "has a duty to exercise that measure of care and diligence that an ordinary prudent person would exercise under similar circumstances." *In re Barrows*, 171 B.R. 455, 457 (Bankr. D.N.H. 1994).

### (1)    Trustee Improperly Seized the '214 Patent.

A trustee is required to initiate an adversary proceeding "to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee." Fed. R. Bankr. P. 7001(1). Similarly, a trustee is required to initiate an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). Courts have repeatedly prevented attempts by trustees to avoid assignments without the trustee seeking such relief through an adversary proceeding. *See Bear v. Coben (In re Golden Plan of Cal., Inc.)*, 829 F.2d 705, 711-12 (9th Cir. 1986); *In re Baker*, 246 B.R. 379, 381-82 (Bankr. E.D. Mo. 2000).

Here, Trustee is attempting to take the '214 Patent and make it part of the bankruptcy estate, even though it was abandoned and assigned to SyncPoint. (Ex. C, ¶ 9.) Trustee failed to instigate an adversary proceeding to join the Assets into the bankruptcy estate, and has thereby deprived Debtors and SyncPoint of the due process protections afforded under the Bankruptcy Code. Putting the merits of the adversary complaint aside (even though Debtors and SyncPoint's claims are meritorious), Trustee's actions are in direct violation of multiple statutes, and have substantially impaired the value of the Assets. Her actions have jeopardized SyncPoint's claims in the Texas Case and has diminished their value through her improper filings in this Court. By failing to properly go after the Assets, Trustee was engaged in misconduct worthy of removal.

### (2)  Trustee Grossly Mismanaged the Sale of the Assets

When selling estate assets, a trustee is required to comply with 11 U.S.C. § 363. In determining whether to grant a § 363 sale, a court must find that the trustee has a good business reason to sell the property. Thus, a trustee must establish that: (i) there is a sound business purpose for the sale; (ii) the proposed sale price is fair; (iii) the trustee has provided adequate and reasonable notice; and (iv) the buyer has acted in good faith. *See In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991) (relating to sale of substantially of the debtor's assets); *In re Indus. Valley of Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). Further, a trustee "owes a duty to the Debtor to maximize value, particularly here where there is a real chance that all creditors may be paid in full and the Debtor may receive funds back." *In re Kazis*, 257 B.R. 112, 114 (Bankr. D. Mass. 2001).[1] A trustee must also comply with the notice and hearing requirements of § 363(b) before liquidating an estate asset. 11 U.S.C. § 363(b)(1).

This case is similar to *Abbotts Dairies*, wherein the trustee offered the assets at a seemingly lower-than-market-value price. 788 F.2d at 149-51. The Court noted a likely absence of "good faith" because "[n]either party introduced any evidence going to value." *Id.* at 149. The *Abbots Dairies* court also noted that there could be no "good faith" purchase if the parties colluded and purchased the property below the reasonable value. *See id.* at 151. In part, the Court said that the requirements for § 363(b) had not been met because there was insufficient evidence to reflect that a proper sale was made in good faith. *Id.* Similarly here, none of the required elements to justify a § 363 sale are met. Trustee's attempt to sell the Assets failed to meet the burden or standards required to sell the Assets pursuant to the Bankruptcy Code. Trustee presented notice of the Purchase Agreement, with the signature of one of the PixArt

---

[1] Typically, there is fair consideration in a bankruptcy sale when the purchaser pays "75% of the appraised value of the assets." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986).

Defendants already affixed, after the deal had essentially been made. (*See* Dkt. 39.) Then Trustee attempted to expedite the Motion for Authority to Sell by Private Sale Certain Assets ("**Motion to Sell Assets**") during the holiday break under the pretense that the deal could fall apart—even though PixArt already signed the Purchase Agreement. (*Compare* Dkt. 40 *with* Ex. E.) Trustee failed to maximize the value of the Assets, as the Purchase Agreement was for $150,000 in comparison to the potential tens of millions at stake in the lawsuit. In so doing, Trustee failed to maximize the return for the bankruptcy estate—which includes the Debtors—even though she is under an obligation to ensure that the sales price is fair and reasonable. *See In re Delaware & Hudson Railway Co.*, 124 B.R. at 176.

In addition, the Purchase Agreement was not the result of good faith negotiations as it was completed with a party directly adverse to the Debtors' interests. Trustee admits that she had little or no experience in patent law, or valuing patent assets, or related claims for patent infringement, or patent litigation. Trustee also did not utilize any experts to assist with her lack of experience in any of these areas. (*See* Dkt. 39.) These would be necessary and beneficial prerequisites in determining the value of the Assets and claims in the Texas Case, and would allow Trustee to sell the Assets at a "fair and reasonable" price. Effectively, Trustee used the PixArt Defendants (a party with obvious adverse interest to the estate) as her expert evaluators, and relied only upon the representations of a party that had every reason to offer substandard consideration.

Trustee, in her Motion to Sell Assets, said she "believes that a sale by way of public auction would produce only liquidation value for the Asset which the Trustee believes may be less than the Purchase Price." (Dkt. 39, ¶ 15.) This statement exhibits the gross mismanagement that has taken place here. The PixArt Defendants are companies driven by profit and are undoubtedly seeking to pay the lowest price possible to obtain the Assets. Competition for the Assets could have raised the asking price, where over $1 million had been invested in the enforcement of the '214 Patent. Making

this available to the public could similarly have raised the asking price for the Assets. Instead, Trustee simply negotiated extremely favorable settlement terms with a party who had an adverse interest to the estate, and the Debtors who she owed a duty to protect.

The Court should remove Trustee as she failed to protect the beneficiaries of the estate, and unequivocally demonstrated that she will not protect the beneficiaries of the estate in the future. Trustee undoubtedly knew of the Texas Case, that the PixArt Defendants were adverse to SyncPoint (and in turn the Debtors' interests), and that millions of dollars are at issue. (*See* Exs. D and E.) Trustee knew that the buyers had adverse interests to a beneficiary of the estate—implicating and heightening Trustee's duties to ensure that the bankruptcy estate was properly administered. This is especially egregious where Trustee entered into the Purchase Agreement with PixArt without disclosing this to the Debtors, creditors, or even the Court. Trustee, however, failed to meet the standard of care necessary to satisfy her duties. Trustee's lack of due diligence substantially injured the Debtors, and impaired the estate by halting the Texas Case. Trustee's conduct (whether it be malicious or grossly negligent) are sufficient to justify the Court's decision to remove Trustee as the acting trustee over the Debtors' bankruptcy estate.

### B.      Trustee Violated Her Fiduciary Duty to the Bankruptcy Estate.

A trustee is the "legal representative" and "fiduciary" of the estate. *See U.S. Trustee v. Joseph (In re Joseph)*, 208 B.R. 55, 60 (B.A.P. 9th Cir. 1997). This fiduciary obligation also includes the duty to conserve the assets of the estate to maximize distribution to the estate's beneficiaries—including the debtors of the estate. *See Barrows*, 171 B.R. at 457. "The title "trustee" has fiduciary significance in the equity sense," and thus the trustee must represent the parties without partiality. *See AFI Holding*, 530 at 844. Further:

The duties of a trustee are of great import to preserving the integrity and efficiency

> of the bankruptcy system. Accusations or appearances of impropriety by a trustee should not be taken lightly. Courts should investigate serious accusations against trustees to uphold public confidence in the integrity of the bankruptcy system.

*JMW*, 494 B.R. at 881. These fiduciary duties include, but are not limited to, the duties of care, loyalty and impartiality. *In re Avery*, 272 B.R. 718, 734 (Bankr. E.D. Cal. 2002).

For the same reasons found in Section I.A, the Court should find that Trustee failed to uphold her fiduciary duty. Any sale of the Assets needed to be in the best interests of the bankruptcy estate, which includes the Debtors (and by virtue of the assignment, SyncPoint). Trustee attempted to sell what is potentially a multi-million-dollar asset for $150,000 to a party directly adverse to the Debtors. The Trustee's dealings reek of bad faith as she attempted to sell the '214 Patent without providing notice to Debtors or even allowing the Debtors to participate in what was essentially a settlement agreement for the Texas Case. Trustee did not make this a public sale, but rather severely limited the pool of buyers. Then, Trustee tried to rush these proceedings over the Christmas and New Year holidays, a time when most attorneys are unavailable. The Trustee even suggested that the case be expedited to ensure that the buyer didn't drop out of the deal—even though PixArt had committed to the deal (as evidenced by their signature on the Purchase Agreement). (*See* Dkt. 39, ¶ 16; Ex. F.) These breaches of fiduciary duty warrant and justify Trustee's removal.

## C.      Trustee's Committed Misconduct Through Her Misrepresentations.

Because of her unique and important position as an officer of the Court and fiduciary to the estates, the Trustee "owe[s] the court and the public duties of good faith and complete candor in dealing with the judiciary." *In re Dinova*, 212 B.R. at 447 (finding a breach of duty when trustee failed to exhibit candor with the court by filing a misleading application to the court). The Trustee must engage in "full and frank disclosure to creditors and the court." *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999).

Here, Trustee misrepresented to the Court in her Motion to Sell Assets that the Purchase Agreement between the PixArt Defendants and Trustee was done in good faith, "for fair market value," and with an asset she could sell. (*See* Dkt. 39, ¶ 15.) Trustee also misrepresented to the PixArt Defendants that the Assets were assets of the estate, even though they had been abandoned two years prior and no evidentiary proceeding had been held to determine otherwise. Trustee filed the Motion to Sell and represented to the court that the sale was for "fair market value" and thus in good faith. Specifically, Trustee stated:

> The Trustee asserts that the Sale is in the best interest of the estate since the Trustee has received an offer which, she believes equals the fair market value of the Asset. The Trustee believes that a sale by way of public auction would produce only liquidation value for the Asset which the Trustee believes may be less than the Purchase Price and would involve additional cost to the estate.

(Dkt. 39, ¶ 15.) Noticeably, Trustee failed to include any justification for $150,000 price. As to be expected, the PixArt defendant in the Texas Case jumped at the opportunity to low-ball Trustee— and by proxy, the Debtors and the rest of the Debtors' estate.

For Trustee to certify that the Purchase Agreement was made in good faith and that "she believes equals the fair market value of the Asset" was a misrepresentation to the Court. (*See id*.) Trustee made no attempt to properly evaluate the Assets, hire an expert to evaluate the Assets, nor did she have any experience in patent litigation or valuing patents. Trustee has no basis to justify the "fair market value." By saying that the transaction was for "fair market value," Trustee was effectively telling the Court that she knew how much the fair market value was and that the Assets equaled that value. These misrepresentations warrant Trustee's removal.

### D. Trustee's Actions Have Made Her a Material Witness in this Case.

"[O]nce it appears that such a lawsuit against a trustee has merit, the trustee has a duty to take steps to protect creditors and avoid self-preserving decisions in the case. Resignation from the

13

case, or hiring independent counsel to defend the trustee, may be appropriate." *In re Morgan*, 375 B.R. 838, 855 (B.A.P. 8th Cir. 2007). The Rules of Professional Conduct, as set forth by the American Bar Association ("**ABA**"), states that "a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." ABA Rule 3.7(a). Combining "the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest." Comment on ABA Rule 3.7. "A conflict of interest can constitute "cause" for removal if, based upon the totality of the circumstances, the conflict could have a materially adverse effect on the estate." *In re Tres-Ark, Inc.*, 486 B.R. 460, 466 (Bankr. W.D. Tex. 2012).

Here, SyncPoint and Debtors initiated an adversarial proceeding against the Trustee, and she is now irrefutably compromised. (Dkt. 63, Ex. A.) As such, Trustee is now an interested party and/or a material witness relating to the issue of harm to the estate's assets. Trustee's actions lowered the value of the Assets, and harmed Debtors and SyncPoint by violating the Bankruptcy Code and acting as an impartial trustee to an adverse third party with interests in complete opposition to the Debtors. Debtors and SyncPoint are seeking discovery from the Trustee that includes all of her communications with PixArt and Nintendo counsel including the negotiations and representations that she made regarding ownership of the Assets. (*See id.*) Trustee will be deposed in addition to providing this discovery. She therefore is a material witness to a material issue and is conflicted and no longer can act in a neutral position for the best interests of the estate.

E.      **Trustee is Not a Disinterested Party.**

A trustee is to be disinterested. *See* 11 U.S.C. § 701(a)(1). Courts have found that:

> [A] bankruptcy trustee must have no interest adverse to the estate, nor profit from her handling of the estate. She is an independent person with no prior connection to either the debtor or the creditors. [Her] primary job is to marshal and sell assets, so that those assets can be distributed to the estate's creditors and then close the estate.

*In re AFI Holding*, 530 F.3d at 844 (internal quotes and citations omitted). The disinterestedness provision "is broad enough to exclude a trustee with some interest or relationship that 'would even faintly color the independence and impartial attitude required by the Code." *Id.* at 838.

Trustee's conduct ceased being impartial and equitable once she felt that she had been deceived by the Debtors. She colluded with the PixArt Defendants to short-sell the Assets, as evidenced by breaches of confidentiality relating to the Texas Case (Ex. C, ¶ 16-21.) Trustee is seeking revenge (through the actions noted in the sections above), to the detriment of the estate. In addition, these actions were driven by a desire to profit from the hasty sale of the Assets, which is strictly prohibited by the Bankruptcy Code, and should not be tolerated and justifies her removal.

## CONCLUSION

For the reasons stated above, the Court should grant Debtors' motion to remove Trustee as trustee for the Debtors' Chapter 7 bankruptcy estate.

Respectfully submitted,

Dated: June 23, 2016

By: /s/ Joseph G. Pia
Joseph G. Pia
joe.pia@padrm.com
Utah State Bar No. 9945 (*pro hac pending*)
Robert Aycock
Utah State Bar No. 8878
raycock@padrm.com
PIA ANDERSON DORIUS REYNARD & MOSS
136 E. South Temple, 19th Floor
Salt Lake City, Utah 84111
Telephone: (801) 350-9000
Facsimile: (801) 350-9010

Carl D. Hanson
carl@hansonandnolin.com
HANSON AND NOLIN, LLP
276 Newport Road
Suite 204 The Gallery
New London, NH 03257