UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:

KARL C. HANSEN AND LISA H. HANSEN,

Debtors.

Chapter 7

Case No. 12-11907-JMD

Hearing Date:  April 12, 2017
Hearing Time:  9:00 a.m.

## CHAPTER 7 TRUSTEE'S MOTION FOR SALE
## OR OTHER DISPOSITION OF PATENT ASSETS

Olga L. Gordon, the duly-appointed Chapter 7 Trustee for the above-captioned bankruptcy estate (the "Trustee") hereby moves that this Court approve the sale of the Patent Assets (defined in paragraph 3 below), free and clear of all liens, encumbrances or adverse interests, (a) to PixArt Imaging, Inc. ("PixArt") pursuant to the Purchase and Sale Agreement between the Trustee and PixArt dated January 21, 2016 (the "PixArt Offer"), a copy of which is annexed hereto as Exhibit A, or (b) pursuant to a higher or better offer.  The Stipulation Concerning Patent Rights dated February 21, 2017 (the "Stipulation"), which was approved by this Court on March 21, 2017 [Docket No. 101], provides for the SyncPoint Proposal (as defined in the Stipulation) to be considered a qualifying counteroffer, subject, however, to this Court's determination whether the SyncPoint Proposal is higher or better than the PixArt Offer, all as more specifically explained below.  As grounds for this motion, the Trustee states:

### Background

1.      The Debtors commenced this case on June 11, 2012 (the "Petition Date") by filing a voluntary petition under chapter 7 of the Bankruptcy Code, along with their schedules of assets and liabilities (the "Schedules").  The Trustee was appointed as chapter 7 trustee, the Debtors

were examined by the Trustee at the meeting of creditors held pursuant to section 341 of the Bankruptcy Code (the "341 Meeting"), and the case was closed with no dividend to creditors.

2.  On September 3, 2015, the case was reopened, and the Trustee was reappointed the next day.  Notice of the reopened case, including the deadline to file proofs of claim (the "Bar Date"), was sent to all creditors listed in the Schedules.  Claims in the total amount of $19,316.69 were filed on or before the Bar Date.  In addition, the estate is liable for administrative expenses including the Trustee's commission (if any) and the fees and reimbursable expenses of her counsel.

3.  On the Petition Date, Debtor Karl C. Hansen ("Hansen") owned the following domestic and foreign patents: US6275214B1, US6952198B2, US7091949B2, EP1200955B1, DE60023900T2, CA2378154C, JP2003504705A(JP4822643B2), and AU200057549A, which Hansen licensed to PixArt Imaging, Inc. ("PixArt") on or about June 26, 2008, pursuant to a Non-Exclusive License Agreement (the "PixArt License Agreement"), and all rights associated with such patents (all of the foregoing, the "Patent Assets").  After this case was closed and before it was reopened, Hansen conveyed the Patent Assets to SyncPoint Imaging LLC ("SyncPoint"), which he controls.  SyncPoint brought suit against PixArt, Nintendo and others for patent infringement and other causes of action in the United States District Court for the District of Texas, Marshall Division (Case No. 2:15-cv-247) (the "Patent Case").  PixArt denied liability and the Patent Case remains pending.  SyncPoint asserts that the damages claimed in the Patent Case are contractual in nature and to date exceed $28 million plus interest.

4.  Disputes arose between Hansen and the Trustee concerning, *inter alia*, (a) the Trustee's allegation that the Patent Assets were not properly disclosed in the Schedules and at the 341 Meeting, (b) whether, in consequence, the Patent Assets belong or must be turned over to

-2-

the Trustee, or whether SyncPoint owns the Patent Assets free and clear of any interest of the Trustee, and (c) the Debtors' allegation, after the Trustee had filed an adversary complaint against them, that the Trustee's conduct concerning the Patent Assets, including attempting to sell the Patent Assets to PixArt, was improper and that the Trustee should be removed.  Pursuant to the Stipulation, however, the Trustee, the Debtors and SyncPoint agreed to drop these disputes and instead present to this Court the underlying economic issue of whether (i) the Patent Assets should be sold to PixArt for $150,000 pursuant to the PixArt Offer,[1] or a higher or better cash purchase offer submitted in response to this motion; or (ii) the Patent Case should be litigated to a conclusion, whether through judgment or settlement, with the creditors of the estate receiving up to full payment plus interest from SyncPoint's recovery, if any.  This motion presents that question to the Court.

## The PixArt Offer

5.      The key terms of the PixArt Offer are as follows:[2]

- The purchase price is $150,000 or, if less, the aggregate amount of all allowed administrative expenses and creditors' claims.  As of the date of this motion, this amount exceeds $150,000.[3]

- PixArt has made a deposit of $50,000, which the Trustee is holding.  The deposit will be applied to the purchase price at the closing.  If, however, this Court were

---

[1]  As a technical matter, the PixArt Offer is for the lesser of $150,000 or the aggregate sum of all allowed administrative expenses and prepetition claims.  The sum total of these items, assuming all are allowed, exceeds $150,000.

[2]  These bullet points are intended as a summary and not a full recital of the terms of the PixArt Offer.  While the summary is believed accurate, the PixArt Offer rather than this motion will control in the event of a conflict between the two.

[3]  Creditors' claims filed by the Bar Date are $19,316.69.  The trustee commission on $150,000 would be $10,750. As of the filing of this motion, accrued fees and expenses of counsel to the Trustee are estimated to be $130,000. Assuming that all of the foregoing items are allowed by the Court, the total is about $160,000, and further counsel fees and expenses are expected to accrue through the date when the sale to PixArt, if approved by this Court, will close.  However, as discussed in paragraph 6 of this motion, the Trustee and her counsel will subordinate their administrative expense claims to allowed prepetition claims filed by the Bar Date so that such claims would be paid in full if the PixArt Offer were to be approved.

7917851v1

to approve another offer for the Patent Assets, PixArt is entitled to return of its deposit.

- The sale will be consummated within seven days of an order of this Court approving the PixArt Offer.  There are no conditions to consummation; indeed, the parties are required to close the sale even if an appeal from the sale order is pending.

- The sale is AS IS and WHERE IS, with a disclaimer of warranties as permitted by law.  From and after the closing, PixArt will indemnify the bankruptcy estate from any liability arising on account of post-closing events.

6.     The economic effect on the estate and parties in interest from consummating a sale pursuant to the PixArt Offer would be:  (a) administrative expenses would be paid in full, except that the Trustee has committed to subordinate such amount of her commission and counsel fees as necessary to assure that all allowed prepetition claims filed on or before the Bar Date are paid in full; (b) allowed prepetition claims filed on or before the Bar Date will be paid in full; and (c) there would be no distribution or reversion of assets to the Debtors.

**The Patent Case**

7.     The Patent Assets include U.S. Patent No. 6,275,214 ("the '214 Patent"), titled "Computer Presentation System and Method with Optical Tracking of Wireless Pointer."  The PixArt License Agreement allows PixArt to produce and sell products covered by the '214 Patent.  SyncPoint claims that PixArt sold to Nintendo of America, Inc., and Nintendo Co., Ltd. (collectively "Nintendo") for inclusion in their Wii and Wii U game systems components that were covered by the '214 Patent and by the License Agreement.  The Patent Case involves claims against PixArt and Nintendo for infringement of the '214 Patent and breach of the PixArt License Agreement.  SyncPoint alleges that the damages for patent infringement and breach of contract exceed $28,000,000, excluding interest.

8.     SyncPoint reports that a recent *ex parte* re-examination of the '214 Patent by the U.S. Patent and Trademark Office resulted in a non-final office action finding all claims of the

-4-

patent invalid, a result that would moot any patent infringement claims.  SyncPoint asserts, however, that its claim for royalties would be unaffected.  SyncPoint points to the provision of the License Agreement that although PixArt may terminate the Agreement if "a court . . . determines [the patent] is invalid or unenforceable," such termination does not "relieve or discharge [PixArt] from any duty, obligation, or liability that was accrued as of the date of the termination (including, without limitation, the obligation to indemnify or to pay any amounts owing as of the date of termination)"[4] and asserts that PixArt owes royalties under the Agreement for "LICENSED PRODUCT[S]" based solely on whether the products "would infringe one or more claims of the LICENSED PATENTS"[5] – an issue that SyncPoint claims is independent of invalidity.  Accordingly, SyncPoint takes the position that regardless of the outcome of the reexamination of the '214 Patent, PixArt is liable for breach of contract and the payment of royalties.

9.      In 2016, following an initial order on claim construction, the district court hearing the Patent Case stayed that case in light of the dispute in this Court regarding ownership of the '214 Patent and associated claims.  Once the ownership issue is resolved – as would be the case if this Court were to approve the SyncPoint Proposal – SyncPoint expects that the Patent Case would go forward.

10.     Since this is a chapter 7 case, the Trustee is required to "collect and reduce to money the property of the estate . . . as expeditiously as is compatible with the best interests of parties in interest."  In general this means that assets should be sold for cash.  However, in this case the Debtors argue that litigating the Patent Case is in the best interests of parties in interest

---

[4] PixArt License Agreement §§ 5.2, 5.4.

[5] *Id.*, § 1.10.1.

because, while the PixArt Offer is insufficient to provide any recovery for the Debtors, the Patent Case offers the possibility of a substantial recovery for them.[6]  If there is a recovery, the first dollars (net of required payments of counsel fees and reimbursement of counsel's expenses) will be turned over to the Trustee until she has received an amount sufficient to pay creditors (including administrative creditors) in full plus interest.  However, if there is no (or only a very small) recovery in the Patent Case, creditors will have foregone payment in full as provided by the PixArt Offer.[7]

11.    The economic effect on the estate and parties in interest from consummating the SyncPoint Proposal would be:  (a) the first dollars, if any, received by the estate from the Patent Case would be used to pay administrative expenses (estimated, in this scenario, to be about $170,000), (b) the next dollars, if any, would be used to make a *pro rata* distribution to allowed prepetition claims, (c)  the next dollars, if any, would be used to pay interest at the federal judgment rate on prepetition claims (from the Petition Date through the date of payment) and on administrative expenses (from the date of allowance, or such other date as the Court may designate, through the date of payment);  and (d) the Debtors (through SyncPoint) would have the benefit of the remaining proceeds, if any, of the Patent Case.  The Trustee estimates that administrative expenses and timely-filed prepetition claims would be paid in full if the estate's share of proceeds from the Patent Case were to approximate $200,000.  The estate's share will be paid off the top from proceeds otherwise payable to SyncPoint; however, under the fee agreement with litigation counsel in the Patent Case, certain expenses and fees get paid first or

---

[6] Under the Stipulation, a benefit to SyncPoint is to be considered synonymous with a benefit to the Debtors.

[7] Although the PixArt Offer is insufficient to pay administrative expenses and creditors' claims in full, the Trustee will subordinate her administrative expense claim and that of her counsel to the extent necessary to assure payment of the full allowed amount of every prepetition claim submitted on or before the Bar Date.

7917851v1

*pro rata.* The Trustee expects that, in its response to this motion, SyncPoint will expressly lay out the (i) the amount of gross recovery in the Patent Case that would be needed to satisfy obligations of the estate in full, and (ii) the economic effect of recoveries less than that amount.

## Relief on the Motion Should be Granted

12.     A chapter 7 trustee is required to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. § 704(a)(1).  The PixArt Offer would expeditiously reduce the Patent Assets to money, and result in full payment of allowed, timely-filed prepetition claims.  The SyncPoint Proposal would reduce the Patent Assets to money less expeditiously, and the amount of money would be zero if the Patent Case is unsuccessful.  However, the Debtors assert that the SyncPoint Proposal is most compatible with the best interests of parties in interest.  In essence, they argue that the huge upside for the Debtors if the Patent Case is successful outweighs the risk and delay to creditors from foregoing immediate payment in full under the PixArt Offer.

13.     The Debtors are parties in interest and, if they can establish the likelihood of a surplus in the chapter 7 estate, they have standing with respect to a motion to sell.  *See generally Spenlinhauer v. O'Donnell*, 261 F.3d 113, 119 (1st Cir. 2001) ("The chapter 7 debtor may establish standing by demonstrating, *inter alia*, that nullification of the sale is likely to result in an overall surplus in the chapter 7 estate – *viz.*, a total nonexempt-asset valuation exceeding all allowed claims against the chapter 7 estate – to which the debtor, *qua individual*, would become entitled once the bankruptcy case is closed."); *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1143 n.12 (1st Cir. 1992).  When a viable alternative is available, a trustee ought not to accept an offer simply because it will pay creditors in full, disregarding the interests of the debtor.  This case, however, presents the issue of risk rather than valuation *per se*.  Except to the

extent that a counteroffer to the PixArt Offer other than the SyncPoint Proposal is received, the PixArt Offer for $150,000 defines the amount available to the estate on a non-contingent basis. The SyncPoint Proposal will provide money only if the Patent Case is successful.

14.     It is possible to imagine a situation – suppose the litigation had close to a 100% chance of success and if successful would yield proceeds many times what creditors are owed – where accepting an offer subject to a litigation contingency could be preferable to a cash offer paying creditors in full.  Just as clearly, the litigation approach would not be preferable in a situation where the chances of success, and/or the surplus to the estate in the event of success, were small.  Whether the Patent Case presents a great enough chance of success, and promises a great enough benefit to the Debtors in the event of success, to be worth placing the creditors at risk of obtaining zero rather than 100 percent payment is the issue this Court will need to decide on this motion.  The Trustee expects that in making the decision, the Court will have the benefit of written submissions by PixArt and SyncPoint on or before the deadline for objections to this motion, as well as evidentiary presentations by PixArt and SyncPoint at the hearing on this motion.[8]

15.     While both sides have discussed their respective positions with the Trustee, she has concluded that she needs the benefit of the evidence and argument presented by both sides at the sale hearing before making a recommendation to the Court about whether the PixArt Offer or the SyncPoint Proposal should be accepted.

16.     Upon information and belief, there are no liens or encumbrances on the Patent Assets.  Accordingly, the requirements of section 363(f) of the Bankruptcy Code do not apply.

17.     The Trustee has no relationship with PixArt, SyncPoint or the Debtors.

---

[8] As directed by the Court at the hearing on approval of the Stipulation, a form of the Court's standard final pretrial order will be entered governing evidentiary matters.

7917851v1

18.     The Trustee asserts that the Sale is in the best interest of the estate since the PixArt Offer or the SyncPoint Proposal, whichever is determined to have the greatest value, represents not less than the fair market value of the Patent Assets.  The Trustee believes that for an asset of this type, a sale by way of public auction would produce only liquidation value or perhaps no offer at all, and would involve additional cost to the estate.

19.     The Trustee states that, pursuant to LBR 7102(b)(2), an accompanying memorandum of law should not be required for the relief requested herein because the relevant law has been sufficiently set forth in this Motion.

## Notice and Order

20.     Submitted herewith is the Notice of Sale which will be served on all parties in interest and any other person that may be interested in purchasing the Assets.  Also submitted herewith is a proposed form of order; however, the Trustee intends to submit a revised form of order based on (a) the Court's determination of the winning bid, (b) further discussions with the winning bidder concerning the contents of the order, and (c) the evidence and argument presented at the hearing.

## Conclusion

WHEREFORE the Trustee prays that this Court (a) grant the motion by entering an order approving disposition of the Patent Assets in accordance with the PixArt Offer, the SyncPoint Proposal or such other timely-submitted and qualified offer for the Patent Assets as this Court determines to be the highest or otherwise best offer therefor, and (b) grant such other and further relief on this motion as the Court may deem just.

7917851v1

-10-

OLGA L. GORDON, CHAPTER 7 TRUSTEE,

By her attorneys,


/s/ Daniel C. Cohn
Daniel C. Cohn, BNH 03239
Murtha Cullina LLP
99 High Street
Boston, Massachusetts 02110-2320
Telephone:  (617) 457-4000
Facsimile:  (617) 482-3868
dcohn@murthalaw.com

Dated:  March 22, 2016

7917851v1