**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **In re:** | **CHAPTER 7** |
| **KARL C. HANSEN AND LISA H. HANSEN,** | Case No. 1:2-BK-11907-JMD |
| Debtors, | Hearing Date: April 12, 2017<br>Hearing Time: 9:00 AM |

**SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTORS' OBJECTION/COUNTEROFFER TO TRUSTEE'S MOTION FOR SALE OR OTHER DISPOSITION OF PATENT ASSETS (Dkt. No. 103)**

Karl C. Hansen and Lisa H. Hansen ("Debtors") and SyncPoint Imaging, LLC (collectively "SyncPoint"),[1] hereby submit this Supplemental Brief in Support of Debtors' Objection/Counteroffer to the Trustee's Motion for Sale or Other Disposition of Patent Assets to explain their agreement with their counsel "for payment of counsel fees and reimbursement of expenses in connection with the Patent Case and related proceedings, currently outstanding and projected-to-be-incurred amounts thereof, and the effect of such agreements on the estate's share of potential recoveries in the Patent Case." *See* paragraph 11 of the Scheduling Order.

As explained in its Objection, and as further set forth below, Syncpoint has at least "some reasonable chance" of prevailing on the patent contract claims against Pixart Imaging, Inc. ("Pixart") that the Trustee proposes to sell to none other than Pixart. Significantly, Syncpoint's law firm, Pia Anderson Moss Hoyt, has been prosecuting that case on a contingency fee basis and will continue to do so, meaning the bankruptcy estate will not have to bear any of the

---

[1] Syncpoint is soley owned by Debtor Karl C. Hansen.

burdens of financing ongoing litigation. And the Debtors themselves have offered to pay the estate with the first money the Debtors recover on any of the relevant patent claims. Therefore, the Court should not approve the sale to Pixart.

## I. Syncpoint's Agreement with its Patent Contract Counsel Benefits the Bankruptcy Estate

On October 22, 2014, before Syncpoint filed its patent infringement and contract related claims against Pixart in early 2015, *see SyncPoint Imaging, LLC v. Nintendo of America, Inc., et al.,* Case No. 2:15-cv-00247-JRG-RSP ("Patent Contract Claims"), it entered into a contingency fee agreement for the Patent Contract Claims with its outside counsel Pia Anderson Moss Hoyt ("PAMH") f/k/a Pia Anderson Dorius Reynard and Moss ("Contingent Agreement"). To summarize, in that Contingent Agreement, Syncpoint and PAMH agreed that litigation would be financed through a contingency fee arrangement where Syncpoint would recover 40% and PAMH 45% of any award recovered from the Patent Contract Claims, with 15% to co-counsel or local counsel if any. *Id.* Under the Contingent Agreement, PAMH would be primarily responsible for payment of costs and out-of-pocket expenses with Syncpoint contributing up to $10,000 of those costs. *Id.* The Contingent Agreement provided that the costs and out-of-pocket expenses associated with the litigation of the Patent Contract Claims would be reimbursed first out of any recovery, with Syncpoint in first position as to any costs it paid. *Id.*

PAHM and Syncpoint have paid the fees and out-of-pocket expenses in pursuit of the Patent Contract Claims. Because the majority of all costs and out-of-pocket expenses to litigate the Patent and Contract Claims have already been expended as most, if not all, fact and expert discovery has been completed with all expert reports and expert and fact depositions completed any additional costs and out-of-pocket expenses going forward should not be much more than

2

what has already been expended. In any event, Debtors, SyncPoint, and its counsel have now agreed that they will first pay the Trustee 100% of her fees and costs and any outstanding debt to the creditors from the portion of any recovery they receive from the Patent Contract Claims. Any remainder would be distributed in accordance with the Contingent Agreement.

### A. Unless Syncpoint Recovers Nothing, the Bankruptcy Estate Should be Made Whole Under the Most Likely Outcomes from the Patent Contract Claims.

If it prevails on its breach of contract claims, the amount of damages recovered by Syncpoint will most likely fall under one of three scenarios that are dependent on the period of time for which damages may recovered.

First, if this matter were to proceed in binding arbitration as called for in the License Agreement and now agreed to by the parties, then the time period for recovery is the entire term of the License Agreement because no statute of limitations is believed to apply.[2] In this scenario, Syncpoint's damages expert has calculated the damages for the relevant time period (9/30/2008-9/30/2012) as at least $28,627,109, with interest.

Second, if this matter were to proceed according to the statute of limitations of the forum state, Texas, then the recovery period is 4 years pursuant to the Texas statute of limitations. In

---

[2] Statutes of limitations do not apply to arbitration proceedings unless the parties' contract expressly provides. See, e.g. NCR Corporation v. CBS Liquor Control, Inc., 874 F. Supp. 168, 173 (S.D. Ohio 1993), aff'd 43 F.3d 1076 (6th Cir. 1995)(The court stated that the parties "could have lawfully incorporated . . . either an express limitation on claims or incorporated a statute of limitations by reference but they did not do so."). In this case, PixArt could have required that the parties include a relatively simple express limitation that would have placed a time bar on Syncpoint's claim for royalties in arbitration, but it chose not to do so.

3

this scenario, Syncpoint's damages expert has calculated the damages for the relevant time period (02/20/2011-9/30/2012) as at least $3,927,217, with interest.

Third, if this matter were to proceed according to the statute of limitations of New Hampshire, then the recovery period is 3 years pursuant to the New Hampshire statute of limitations. In this scenario, Syncpoint's damages expert has calculated the damages for the relevant time period (02/20/12-9/30/2012) as at least $770,712, with interest.

In all three of the above scenarios, the Debtors share of the recovery is sufficient to make the Bankruptcy Estate whole.

    **B.**    **The Court should reject the sale because there is "some reasonable chance" of success for Syncpoint's Patent Contract Claims against PixArt, and the Bankruptcy Estate will not bear any financial burden of ongoing litigation.**

In view of First Circuit case law, the Court should reject PixArt's offer because Debtors' have more than "some reasonable chance" of success in its Patent Contract Claims against Pixart and the estate does, and will, not bear any of the financial burden in the pursuit of those claims.

In their briefing, PixArt and the Trustee have requested that the Court make legal and evidentiary determinations that are the subject of the suit that Syncpoint in the Eastern District of Texas against Nintendo of America, Inc.; Nintendo Co., Ltd. (collectively, "Nintendo"); and PixArt ("Texas Litigation"). But, as evidenced by the bankruptcy court's decision in *In re C.R. Stone Concrete Contractors, Inc.*, 346 B.R. 32, 49–50 (Bankr. D. Mass. 2006), at this stage of the proceedings, this Court has one role: "to balance the value of the claim against the value of the proposed settlement." *Id.* at 48.

4

The First Circuit has specified the factors that the Court must consider when evaluating the value of a claim held by a bankruptcy estate:

> (i) the probability of success in the litigation being compromised;
> (ii) the difficulties, if any, to be encountered in the matter of collection;
> (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and,
> (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

*In re C.R. Stone Concrete Contractors, Inc.,* 346 B.R. 32, 48–49 (Bankr. D. Mass. 2006) (quoting *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995)).

In *C.R. Stone*, the bankruptcy court was asked to approve a proposed settlement between the trustee of an estate and the defendants of a set of complicated legal claims held by an estate but being prosecuted by a debtor-engaged law firm. To make the determination of whether to approve the Trustee's settlement or allow the law firm to continue prosecuting, the court expressly did *not* make substantive determinations regarding the underlying claim—instead, the court merely analyzed the *Jeffrey* factors.

In analyzing the *Jeffrey* factors, the court in *C.R. Stone* began by assessing the "probability of success" (the first *Jeffrey* factor). *Id.* at 50. The court reviewed the evidence regarding the underlying claim that had been provided by the parties, but it did *not* "mak[e] any determinations as to the admissibility of any of the materials submitted or draw[] any conclusions as to the probative value of those materials." *Id.* (emphasis added). Rather, the court considered the evidence "in the aggregate" and determined, from the parties' submissions, that the law firm prosecuting the legal claims had "some reasonable chance" of winning. Merely having "some reasonable chance" was enough to satisfy the first of the *Jeffrey* factors in the favor of the law firm wanting to prosecute the claim. *Id.*

5

The bankruptcy court in *C.R. Stone* then found that each of the other three factors weighed in favor of allowing the law firm to continue to prosecute the case: there was "no evidence that [Defendants] are in any particular financial distress that would make collection difficult" (the second *Jeffrey* factor), *id.*; despite the case's being complex, the law firm actively prosecuting the claim had agreed to do so on a contingency basis, which entirely eliminated the expense (the third *Jeffrey* factor), *id.*; and the legal claim had a possibility to recoup a larger pay-off than the settlement, which itself would provide only "nuisance value" for the claim (the fourth *Jeffrey* factor), *id.*

In *C.R. Stone*, the court was only explicitly concerned with the probability of a maximal return to the creditors. In this case, because of the possibility of a surplus to the Debtor, the Court should consider the probability of a maximal return to the creditors *and* to the Debtors. It is clear that the Trustee has a fiduciary duty to "protect[] the interests of all estate beneficiaries—namely, all classes of creditors, . . . as well as the debtor's interest . . . in any possible surplus property. *The trustee should administer the estate so as to maximize the distribution to the beneficiaries.*" United States Trustee, Handbook for Chapter 7 Trustees (Effective October 1, 1998), https://www.justice.gov/ust/handbook-chapter-7-trustees (last visited April 7, 2016) (emphasis added). *See*, *e.g.*, *In re Wisdom*, 478 B.R. 394, 399 (Bankr. D. Idaho 2012), *aff'd*, 490 B.R. 412 (D. Idaho 2013), *aff'd sub nom. Wisdom v. Gugino*, 649 F. App'x 583 (9th Cir. 2016); *see also* 11 U.S.C § 726(a)(6) (identifying the debtor as a statutorily anticipated beneficiary of the property of the estate, pending a surplus).

Here, too, the Court should find that Syncpoint has met the burdens of the *Jeffrey* factors. As is detailed in the Syncpoint's Objection/Counteroffer, the Debtors have at least "some

6

reasonable chance" of prevailing on the Patent Contract Claims that the Trustee proposes to sell to Pixart. Significantly, as discussed above, the Syncpoint's law firm, PAHM, has been prosecuting the case on a contingency fee basis, meaning the estate will not have to bear any of the burdens of financing the litigation, either attorney fees or costs. And the Debtors have offered to pay the estate with the first money the Debtors recover on any of the Patent Contract Claims.

The Trustee's Motion for Sale and its attending hearings are not the proper venue for a judicial resolution of the merits of the Syncpoint's Patent Contract Claims against PixArt. Rather, as the court did in *In re C.R. Stone*, this Court should adopt Syncpoint's Proposal because (1) it has some reasonable chance for success on its Patent Contract Claims; and (2) the estate will not bear costs of the litigation.

Respectfully submitted,

Dated: April 10, 2017

By: */s/* Joseph G. Pia
Joseph G. Pia
joe.pia@padrm.com
Utah State Bar No. 9945 (*pro hac vice*)
Robert Aycock
Utah State Bar No. 8878
raycock@padrm.com
PIA ANDERSON MOSS HOYT
136 E. South Temple, 19th Floor
Salt Lake City, Utah 84111
Telephone: (801) 350-9000
Facsimile: (801) 350-9010

Carl D. Hanson
carl@hansonandnolin.com
HANSON AND NOLIN, LLP
276 Newport Road
Suite 204 The Gallery
New London, NH 03257

## CERTIFICATE OF SERVICE

I, Joseph G. Pia, hereby certify that a copy of the foregoing SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTORS' OBJECTION/COUNTEROFFER TO TRUSTEE'S MOTION FOR SALE OR OTHER DISPOSITION OF PATENT ASSETS (Dkt. No. 103) has been sent this 10th day of April 2017, via the Court's ECF/electronic mail to all parties on the Court's Electronic Service List.

Dated: April 10, 2017                             By: */s/* Joseph G. Pia